IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ATLANTIC NATIONAL SERVICING CO., LLC, a Maine limited liability company,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>JON P. ANDERSON, *et. al.*,<br><br>Defendants. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 1:06-cv-00002 |

This case requires the court to determine the effect of Defendants' (collectively "Andersons") payment to Atlantic National Servicing Co. of $539,273.41 on July 18, 2006. Specifically, this court must determine whether Atlantic is entitled to a $45,000.00 extension fee – provided for in the applicable agreement should payment be tendered between July 7, 2006, and July 13, 2006 – that was not included in the July 18 payment. The Andersons contend that they do not owe the $45,000 extension fee for two reasons. First, the Andersons argue they made valid tender of the funds before the extension fee applied because they offered, on the afternoon of July 6, 2006, to personally deliver funds to John Butler, an attorney for Atlantic, or to Daryn Davis, a prinicpal of Atlantic residing in Oregon. Second, the Andersons reason that because

1

they ultimately paid Atlantic after July 13, 2006, the extension fee does not apply.  Atlantic responds that the Andersons' offer to pay its attorney or employee on July 6, 2006, did not constitute a valid tender of payment because the offerees did not have authority to accept payment.  Second, Atlantic contends that the extension fee is due because it conditioned acceptance of the Andersons' July 18, 2006 payment on Andersons subsequent payment of the extension fee.  If the court finds that the extension is not applicable, Atlantic argues that the Andersons' failure to pay by July 13, 2006, resulted in the Andersons remaining in default under the loan and forbearance agreement, and that the July 18 payment merely served as a partial payment of outstanding indebtedness.

The court agrees with Atlantic that the Andersons owe the $45,000 extension fee.  The Andersons failed to properly tender payment on July 6, 2006, because Butler and Davis were not authorized to receive payment as required by Utah tender law.  Second, it defies logic to think that a party can successfully avoid a late fee by simply delaying a payment even further.  Consequently, the court GRANTS Atlantic's motion for summary judgment (#53) and DENIES the Andersons' motion for summary judgment (#47).  The Andersons are ordered to pay Atlantic $45,000.00., and upon receipt of this payment, the parties are left to conduct themselves in accordance with the terms of their agreements.

## BACKGROUND

When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.[1]  Rather than recite the entire backdrop of this case,

---

[1] *Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006).

2

the court briefly recites the facts relevant to this order. For the purpose of resolving the

competing motions for summary judgment filed in this case, the court finds the following facts.

In August 1997, the Andersons signed guarantees of payment of performance in

connection with a loan taken by Logan Lodging, Inc.  Although the loan was for an original

amount of $1,000,000.00, the loan was modified and eventually had an outstanding principal

sum of $2,201,649.14.  In 2004, Logan and the Andersons defaulted on the loan.  Atlantic filed a

lawsuit against the Andersons to enforce the loan in January 2006.  On June 14, 2006, the

Andersons and Logan Lodging entered into a Forbearance Agreement with Atlantic, which

allowed Logan and the Andersons to cure the outstanding events of default.  The Forbearance

Agreement contains the following provision:

> B.    Forbearance and Extension.  Pursuant to the request of Borrower,
> Lender agrees to forbear from the exercise of its rights and remedies under the Loan
> and foreclose the security, at law or in equity or otherwise available to Lender as a
> result of the Events of Default under the Loan in accordance with the terms hereof.
> It is understood and agreed by and among Lender and Borrower, and consented to by
> Guarantors that if the unpaid indebtedness of the Loan remaining following the
> closing of the Banga Transaction is paid in full on or before July 6, 2006, Borrower
> shall not be required to pay an extension fee to Lender.  If all obligations under the
> Loan are performed between July 7, 2006 and July 13, 2006, then in addition to all
> other amounts owing to Lender under the Loan Documents, Borrower shall pay to
> Lender an extension fee of $45,000 as partial consideration for Lender entering into
> this Agreement.  Failure to perform all obligation of Borrower under the Loan
> Documents and this Agreement on or before July 13, 2006 shall constitute a default
> hereunder.  Borrower and Guarantors acknowledge and agree that July 13, 2006 shall
> be the termination date of the forbearance granted under this Agreement, and
> furthermore, shall be the modified maturity Date under the Note and Loan
> Documents as modified by this Agreement.

On June 30, 2006, Steven J. Thunell, for and in behalf of Logan Lodging and the

Andersons, called Sam McGee, the Asset Manager for Capital Servicing, Inc. (Capital

administered and serviced the Anderson loan for Atlantic), requesting an extension until July 21, 2006, to pay the final balance owing.  Thunell was informed by McGee that McGee would get back to him.

On July 6, 2006, around 10:00 a.m., Thunell called McGee to follow up on his request for an extension of the deadline, but was unable to reach McGee.  Thunell attempted to contact McGee again that day at 12:00 p.m., but to no avail.  However, about one hour later Thunell received a call from Daryn Davis, a principal of Atlantic, in which Davis informed Thunell that there would not be an extension of time and the $45,000.00 penalty was currently owed.  Davis offered to extend the deadline for an extension fee of $50,000.00.

After his conversation with Davis, Thunell contacted Brandon Jennings at Hickman Land Title Company and asked Jennings to request a payoff letter from Atlantic.  Jennings requested the payoff from Atlantic and received a faxed payoff notice from Atlantic around 2:48 p.m.  The Payoff Demand Letter included an extension fee of $45,000.00.  Around 5:45 p.m. the Andersons' attorney, Stephen Jewell, notified John Butler, one of Atlantic's attorneys, that the Andersons  had deposited the payoff funds, less the $45,000.00 extension fee, with Hickman.  Thunell offered to personally deliver the funds to Butler that evening, but Butler refused to accept payment.  Thunell also offered to travel to the Davis residence in Portland, Oregon, to personally deliver the funds that evening.  Thunell was informed that this would be unacceptable and that the funds needed to be in Atlantic's account on or before July 6, 2006.

On July 7, 2006, Thunell and Jewel had a telephone conference with Thomas Beckett, Atlantic's attorney that initiated this action, in which they indicated that the funds would be paid

upon receiving a corrected payoff letter.  Beckett responded that he was instructed not to release the collateral unless the $45,000.00 penalty was paid.  On July 18, 2006, Thunell requested Jennings to deposit $539,273.41 with Atlantic, and Jennings wired the money.  The $539,273.41 was received by Atlantic on July 18, 2006.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  When a case involves cross-motions for summary judgment, the court "'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'"[3]

## DISCUSSION

The court must determine whether Atlantic is entitled to a $45,000.00 extension fee that was not included in the Andersons' July 18 payment to Atlantic of $539,273.41.  The Andersons argue that they do not owe the extension fee because: (1) they tendered payment *before* the fee was applicable, and/or (2) they ultimately perfected tender *after* the period providing for an extension fee had passed.  The court is unpersuaded by both of these arguments.  As is more fully discussed below, the individuals to whom the Andersons offered payment on July 6, were not

---

[2] Fed. R. Civ. P. Rule 56(c); *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[3] *Am. Inv. Fin. v. United States*, 364 F. Supp. 2d 1321, 1323 (D. Utah 2005) (quoting *Pirkheim v. First UNUM Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000)).

authorized to receive payment as required under Utah tender law.  With respect to the argument that the Andersons paid Atlantic after the extension fee period expired, the court has extreme difficulty finding that a party can avoid an extension/late fee by further delaying a payment. Consequently, the court finds that Atlantic is entitled to the $45,000.00 extension fee.  The court will first address the question of whether there was valid tender on July 6, and then analyze the issue of the July 18 payment.  As provided for in the Forbearance Agreement, the court will analyze the facts according to Utah law.[4]

### A.  The July 6 "Tender" of Payment

The Andersons failed to make a valid tender of payment to Atlantic on July 6, 2006, because the attorney and the employee to whom the Andersons offered payment were not authorized to receive payment as required under Utah tender law.  Utah Code provides that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract."[5]  The Utah Supreme Court has held that in order "[t]o be effective, a tender of payments under a contract must be made to the person entitled to the payment or to his or her authorized representative."[6]  In *Johnston v. Austin*, the purchasers of real property tendered payment to an escrow service, rather than to the actual landowners.[7]  The court

---

[4] Forbearance Agreement, Pl.'s Mem. Opp. Summ. J., Ex. A to Ex. 1 [Docket No. 57-3].

[5] Utah Code Ann. § 70A-3-603(1).

[6] *Johnston v. Austin*, 748 P.2d 1084, 1090 (Utah 1988).

[7] *Id.* at 1086.

held that because the escrow service was not the "authorized representative for receiving payments under the contract" between the buyer and seller, payment to the escrow company did not amount to valid tender under Utah law.[8]

Utah courts have not explained the process by which a representative becomes authorized to receive payment under a contract for purposes of determining effective tender.  Some state courts appear to take the position that an attorney may not receive payment on behalf of her client unless she is *expressly* authorized to do so.  For example, in *Anderson v. Citizens Bank*, the South Carolina Court of Appeals was called upon to determine if an attorney who had been hired by a bank to institute foreclosure proceedings against a farmer was authorized to receive funds from him.[9]  The farmer owed the bank several thousand dollars after his farming operations failed and in order to avoid foreclosure on his property, the farmer sent a check to the bank's attorney.[10]  The *Anderson* court held that although the attorney had filed suit on behalf of the bank, the tender was invalid because "[t]here was no evidence that the attorney had the authority to accept a tender on the [bank's] behalf."[11]

In addition to finding a tender valid when delivered to one *expressly* authorized to receive payment, some courts have found that tender may also be made to one *apparently* authorized to

---

[8] *Id.* at 1090.

[9] 365 S.E.2d 26, 28 (S.C. Ct. App. 1987).

[10] *Id.* at 29.

[11] *Id.* at 31.

receive the funds.[12]  In *Texaco v. Creel*, a corporation delivered funds to a land owner's attorney in order to obtain a lease on the land.[13]  The court held that this tender was valid because the land owner had referred the corporation to his attorney regarding lease options and "had indicated that his attorney would handle the property for him."[14]  As a result of this manifestation from the land owner to the corporation, the court held that the attorney was "apparently authorized" to receive the funds and that the corporation acted reasonably by tendering the money to him.[15]

Even if this court adopts the more liberal standard of *Texaco* and views a tender as valid if offered to one expressly or apparently authorized by the creditor, the Andersons still failed to make a valid tender.  First, the court finds no evidence in the record indicating that Atlantic expressly authorized John Butler or Daryn Davis to receive funds on its behalf under the Forbearance Agreement.  The question then becomes whether either of these two individuals had apparent authority to receive payment.

According to the *Texaco* court, the Andersons would have potentially made valid tender if Atlantic had given apparent authority to John Butler or Daryn Davis to receive funds in its name.[16]  Unlike the creditor in *Texaco*, however, who referred the debtor to his attorney for

---

[12] *See, e.g., Texaco v. Creel*, 292 S.E. 2d 130, 134 (N.C. Ct. App. 1982).

[13] *Id.* at 132.

[14] *Id.* at 134-35.

[15] *Id.* at 135.

[16] Paying an individual that is entitled to payment is only one of five requirements of a valid tender under Utah law.  *See Fitzgerald v. Corbett* 793 P.2d 356, 359 (Utah 1990) (noting that a valid tender of payment "must be (1) timely, (2) made to the person entitled to payment, (3) unconditional, (4) an offer to pay the amount of money due, and (5) coupled with an actual

questions regarding the lease and who indicated that his attorney would be handling the property, there is no evidence in the record that Atlantic turned over the administration of the property to either Butler or Davis.  This court is aware that the record does not contain all of the facts regarding the course of dealings between the Andersons and these two men.  Nevertheless, even if Atlantic had told the Andersons that either of the men would be managing the property, the potential existence of apparent authority was negated by the July 6 Payoff Demand Letter that was received by the Andersons before they made their offers to Butler and Davis.

 The Payoff Demand Letter expressly states that "[t]he funds must be delivered by **wire transfer** (not via check) . . . ."[17]   This method of payment – wire transfer – is the standard practice in the commercial banking and service loan industry.[18]   Thus, while apparent authority exists where the third party reasonably believes that the principal authorized his agent to accept funds for him, the Andersons could not have reasonably believed that Butler or Davis had authority to receive funds because Atlantic sent them a letter specifically mandating that payment be made directly to the bank via wire transfer.  Even if the Andersons could present evidence

---

production of the money or its equivalent").  Because the court finds that the Andersons failed to offer the funds to one entitled to payment, it declines to address the other elements.

 [17] Payoff Demand Letter, Thunell Aff. Ex. D.

 [18] *See* Second McGee Aff. ¶ 8 ("I am not aware of any bank or loan servicer in the commercial banking and lending industry that allows payments to be made to its attorneys or employees in the normal course of business. . . . In the commercial banking and loan servicing industry, lenders instruct their borrowers in writing that virtually all payments and money transfers, particularly for large loan prepayment and/or payoffs, are made either via wire transfer or cashiers check delivered to the lender's bank and/or to the lenders primary place of business. ").

showing that Butler or Davis had been given apparent authority to receive money for Atlantic, the court finds that such authority would have been destroyed by the letter they received on July 6, 2006. Consequently, this court concludes that based upon the facts in evidence, neither Butler nor Davis had apparent authority to receive funds on Atlantic's behalf.

Accordingly, the court finds that the Andersons failed to make a valid tender of payment on July 6, 2006. The next issue is whether the Andersons' July 18 payment escaped the extension fee because it was made after July 13, 2006.

### B.  The July 18 Payment Does not Escape the Extension Fee

Having found that the Andersons failed to tender payment on July 6, 2006, and were not excused from this obligation, the court now turns its attention to the July 18, 2006 payment. The court finds that the Andersons' July 18 payment of $539,273.41 was a valid payment under the Forbearance Agreement, but was not a payment in full satisfaction of Andersons' obligations. The Andersons maintain that because they made their payment on July 18, 2006, and the Forbearance Agreement only provides for a $45,000 extension fee should the payment be made between July 7, 2006, and July 13, 2006, the Andersons are somehow relieved of their obligation to pay the extension fee. This argument is unpersuasive.

It defies logic to think that a party can successfully avoid a late fee by simply delaying a payment even further. The Andersons contend that both parties to the Forbearance Agreement did not intend an extension fee to be payable after July 13, 2006. However, at the same time that they are asking the court to strictly interpret the extension fee provision, they are asking the court to ignore the plain language in the Forbearance Agreement stating that their failure to pay by July

13, 2006, constitutes a default.  The court is unwilling to pursue such an inconsistent line of reasoning.  The Andersons calculated their payment based on the Payoff Demand Letter provided by Atlantic.  The Andersons contemplated that their July 18, 2006 payment was in fulfillment of its obligations under the Forbearance Agreement.  Under the Forbearance Agreement, the last day in which the Andersons' could pay without being assessed the extension fee was July 6, 2006.  Consequently, the court finds that their payment on July 18, 2006, should have included the $45,000.00 extension fee.

Because the court finds that the Andersons owe Atlantic the extension fee, the court finds it unnecessary to address Atlantic's argument that the Andersons remain in default under the loan and Forbearance Agreement and that their July 18, 2006 payment was merely a payment against the outstanding indebtedness.

## CONCLUSION

For the foregoing reasons,  the court GRANTS Atlantic's motion for summary judgment and DENIES the Andersons' motion for summary judgment.  The Andersons are ordered to pay Atlantic $45,000.00., and upon receipt of this payment, the parties are left to operate in accordance with their agreements.  All claims having been resolved, the court directs the Clerk's Office to close this case.

SO ORDERED.

DATED this 22nd day of February, 2007.

11

BY THE COURT:

Paul G. Cassell
United States District Judge